Reese, J.
delivered the opinion of the court.
A suit in chancery was brought in the courts of North Carolina, by one Elijah Kimbrough, the son of the wife of the intestate Davis, against Davis and his wife, to enforce an anti-nuptial agreement between the husband and wife, made in favor of Kimbrough, and in consideration of the intended mar- *471 riase, in which it was stipulated that on the said Kimbrough’s becoming twenty-one years of age, he should have a negro woman slave, named Lucy, at that time the property of Kimbrough’s mother, and certain other articles, and that if the said Kimbrough should die without issue, all the property should return to the said Davis, and his said intended wife, and their children again. In the supreme court of North Carolina a decree was given in said suit in favor of the said Kimbrough against Davis and his wife, in which it was “ordered that Davis, the defendant in that suit, should deliver the aforesaid negroes” (being the said Lucy and her then increase) “to the complainant, the said Kimbrough, and that he should convey them by a deed sufficient to pass the absolute property, provided, the said complainant should die leaving issue, and in the event of his dying without issue, that they, together with their increase, should revert to the defendant Davis, his heirs, executors or administrators, and that he should execute the same in presence of the clerk, or the deputy of the clerk, within twenty days after being served with a copy of the decree.” No deed, pursuant to this decree, or otherwise, was made by Davis to Kimbrough for the negroes in question, but upon the application of Kimbrough’s . agent to Davis for the negroes, Davis delivered them to him, and the agent, by the advice of Kimbrough’s counsel in the suit, gave the following receipt: “Received of John Davis, the within contents, say five negroes, to wit, Lucy, Dilcy, Arthur, Sampson and Stanford, which negroes Elijah Kimbrough recovered of the said John Davis in the supreme court of North Carolina, subject to be returned to the said John Davis, and his heirs, in case the said Elijah Kimbrough should die without leaving any lawful issue.” The negroes wore thereupon brought to Tennessee.
In 1829 Davis departed this life, intestate, and in 1830 Kimbrough also departed this life, without ever having been married. The administrator of Davis brought this action of detinue to recover the negroes from defendant, in whose possession they were, under a sale founded upon certain attachment proceedings against Kimbrough by the defendant as his creditor. And now, the question is, whether this action can *472 be maintained by the personal representative of Davis; and the argument upon the point has been such as to remove from our minds all doubt or difficulty. The task is not ours to fix a construction upon the anti-nuptial contract, and to determine the rights of the parties with regard to it. That has been done; it is res adjudicata, and the parties before the court are concluded by it. Nor is it incumbent on us to enquire how, by the interposition of trustees or otherwise, a conveyance should have been framed so as to have given the legal effect to the limitations indicated in the decree, and to have made the intentions of the court and the rules of law and property co-operate and harmonize. No conveyance whatever having been made, the matter was left in the best possible situation, in view of the events which have happened, to give effect to the rights of the parties as declared in the decree of the supreme court of North Carolina.
From the time of the anti-nuptial contract to the time of the decree, the legal title to the negroes in controversy, by operation of the marriage, was in Davis, and after the decree, no conveyance as therein ordered, having been made, the legal title continued in Davis, as trustee for those interested under the decree. For, in the first place, the legal title was not by the terms, or by the operation of the decree, divested out of Davis and vested in Kimbrough; to attain such an object the decree itself directs that an actual conveyance shall be made: And, in the second place, the delivery alone of the negroes by Davis to Kimbrough, or to his agent, would not in the State of North Carolina, especially since their act of 1806, have the effect to clothe Kimbrough with the legal title; besides, when the delivery was made, it was made expressly upon the terms that the property should be held subject to the rights asserted in the decree, and a written acknowledgment of this in part was given to Davis, at the time, by the agent of Kim-brough.
We have no doubt that the legal title to the property is now in the personal representative of the intestate, Davis, for the benefit of his widow and children; that all interest in the property, on the part of Kimbrough, terminated with his life; and 'that, therefore, the plaintiff can well maintain this action *473 against the defendant, and was entitled to the judgment which , - i . , , , , r ° /v-ne outained in the circuit court, which, therefore, we affirm.
Judgment affirmed.